**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| GERALD CONLEY, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 1:19-cv-3164** |
| | ) |
| WINDOWS, LLC OF INDIANA AKA | ) |
| RENEWAL BY ANDERSEN, DAVIDSON | ) |
| GROUP and RENEWAL BY ANDERSEN | ) |
| LLC, | ) |
| | ) |
|     **Defendants.** | ) |

## COMPLAINT FOR DAMAGES – WITH JURY DEMAND

Plaintiff Gerald Conley ("Conley"), by counsel, for his Complaint against Defendants Windows, LLC of Indiana also known as Renewal by Andersen, Davidson Group (the "Davidson Group") and Renewal by Andersen LLC ("Renewal by Andersen")(collectively, the "Company") states as follows:

### JURISDICTION AND VENUE

1. This suit is brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et. seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a *et. seq.* This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

2. All acts alleged herein were committed within the Southern District of Indiana and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.  Plaintiff Conley is a citizen of the United States and the State of Indiana, and at all relevant times has been a resident of either Marion or Johnson County, Indiana.

4.  Defendant Davidson Group is a for-profit corporation that conducts business within the territorial jurisdiction of this Court.

5.  Defendant Renewal by Andersen is a for-profit corporation that conducts business within the territorial jurisdiction of this Court.

6.  During the course of his employment with the Davidson Group and Renewal by Andersen, Conley was an "employee" of both the Davidson Group and Renewal by Andersen within the meaning of Title VII, 42 U.S.C. § 2000e(f) and he was party to a "contract" with Defendants within the meaning of 42 U.S.C. § 1981.

7.  At all relevant times, the Davidson Group and Renewal by Andersen were "employers" of Conley within the meaning of Title VII, 42 U.S.C. § 2000e(b) and each were party to a "contract" with Conley within the meaning of 42 U.S.C. § 1981.

## FACTS

8.  Conley is an African American male.

9.  Between 2017 and in or around the fall of 2018, Conley worked for the Davidson Group as a Marketing/Revisit Manager.

10. When he was employed by the Davidson Group, Conley was subject to rules, standards and policies of Renewal by Andersen, sold Renewal by Andersen products, attended Renewal by Anderson functions, received Renewal by Andersen awards and was jointly employed by Renewal by Andersen.

2

11. As a Marketing/Revisit Manager, Conley was responsible for working with potential customers who had been in contact with the Davidson Group and its sales representatives, but who had not yet completed purchases for window and home improvement projects.

12. During the course of his employment, Conley received promotions, bonuses and strong performance appraisals.

13. Throughout Conley's employment, his performance met or exceeded the Company's reasonable expectations.

14. In the year before Conley started his employment, the Davidson Group made approximately $75,000 and, during the course of Conley's employment, the Davidson Group made approximately 4 million dollars.

15. Conley was entitled to receive wages, commissions and bonuses for work that he performed in facilitating sales of window and home improvement projects.

16. Beginning on or around February 1, 2018, Conley learned that entries that he entered into the Company computer system to track his work with customers and potential customers had been removed from the Company system and/or deleted.

17. Because Conley's computer entries were removed and/or deleted from the computer system, there was no computer record of notes reflecting work that he performed in connection with sales and/or potential sales to show that he was entitled to receive wages, bonuses and commissions pursuant to Company policy.

18. Conley raised the issue about the removal/deletion of his computer entries and notes reflecting work that he performed in connection with sales and/or potential sales with management on multiple occasions, but it was never corrected.

19. The removal/deletion of entries memorializing work that Conley performed in connection with sales and/or potential sales violated Company policy.

20. Similarly situated Caucasian employees did not have their work entries removed from the Company computer system and/or deleted.

21. Because entries identifying work that Conley performed in connection with sales and/or potential sales were improperly removed from the Company computer system and/or deleted, Conley was improperly denied wages, bonuses and commissions that he was entitled to receive under Company policy.

22. Since on or around February 1, 2018, Conley was denied wages, bonuses and commissions that he was entitled to receive under Company policy and that similarly situated Caucasian employees received in accordance with Company policy.

23. Conley voiced concerns to management about not receiving wages, bonuses and commissions that he was entitled to receive under Company policy.

24. After Conley voiced concerns to management about the removal/deletion of his computer entries and about not receiving wages, bonuses and commissions that he was entitled to receive under Company policy, the Company ended Conley's ability to access the Company's computer system to check for inaccuracies and/or changes with respect to the entries Conley made to reflect the work that he performed in connection with sales and/or potential sales.

25. Similarly situated Caucasian employees could still access the Company's computer system after the Company ended Conley's ability to access the Company's computer system.

26. After he voiced concerns about the removal/deletion of his computer entries and about not receiving wages, bonuses and commissions that he was entitled to receive under Company policy, Conley received discipline, including, but not limited to, being assessed attendance

points that similarly situated Caucasian employees did not receive even though they engaged in the same behavior or activity.

27. After he voiced concerns about the removal/deletion of his computer entries and about not receiving wages, bonuses and commissions that he was entitled to receive under Company policy, the Company applied rules and policies and purported rules and policies to Conley that were not equally applied to similarly situated Caucasian employees.

28. After he voiced concerns about the removal/deletion of his computer entries and about not receiving wages, bonuses and commissions that he was entitled to receive under Company policy, a Company officer said that Conley could attempt to try to find a job with another employer with that "shit in his mouth," referring to Conley's gold tooth dental prosthesis.

29. At or around the time comment about Conley's teeth was made by a Company officer, Conley received an approximate 40% pay cut.

30. In or around November 2018, the Company terminated Conley.

## ADMINISTRATIVE PROCEDURES

31. On November 19, 2018, Conley filed a timely charge alleging race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") against the Davidson Group under charge number 470-2019-00645. A true and accurate copy of the charge is attached hereto as Exhibit 1.

32. On November 19, 2018, Conley filed a timely charge alleging race discrimination and retaliation with the EEOC against Renewal by Andersen under charge number 470-2019-00651. A true and accurate copy of the charge is attached hereto as Exhibit 2.

33. The EEOC had jurisdiction over charge number 470-2019-00645, and on April 30, 2019, it issued Conley a Notice of Right to Sue for charge number 470-2019-00645 that was received on or around May 1, 2019 and that is attached hereto as <u>Exhibit 3</u>.

34. The EEOC had jurisdiction over charge number 470-2019-00651, and on April 30, 2019, it issued Conley a Notice of Right to Sue for charge number 470-2019-00651 that was received on or around May 1, 2019 and that is attached hereto as <u>Exhibit 4</u>.

35. Conley has ninety (90) days from the receipt of the Notice of Right to Sue letters in connection with his EEOC charges, up to and including, July 29, 2019, to file his Complaint alleging violations of Title VII, which time has not passed.

## <u>COUNT I- RACE DISCRIMINATION UNDER TITLE VII</u>

36. All preceding paragraphs are incorporated herein by reference.

37. The Company engaged in unlawful race discrimination in violation of Title VII when it subjected Conley to differential treatment on account of his race.

38. The Company treated Conley differently on account of his race by disciplining him, ending his access to the Company Computer system, denying him wages, bonuses and commissions that he was entitled to receive under Company policy, making disparaging comments about him and through other actions.

39. The Company has willfully and intentionally engaged in discriminatory treatment of Conley on the basis of race and has acted with malice or reckless disregard of Conley's rights.

## <u>COUNT II - RACE DISCRIMINATION UNDER 42 U.S.C. § 1981</u>

40. All preceding paragraphs are incorporated herein by reference.

41. Defendants engaged in unlawful race discrimination in violation of 42 U.S.C. § 1981 when they treated Conley differently than similarly situated Caucasian employees on account of his

race by disciplining him, ending his access to the Company computer system, denying him wages, bonuses and commissions that he was entitled to receive under Company policy, making disparaging comments about him, terminating him and through other actions.

## COUNT III- RETALIATION UNDER TITLE VII

42. All preceding paragraphs are incorporated herein by reference.

43. Defendant engaged in unlawful retaliation against Plaintiff in violation of Title VII when they took action against Conley, including, but not limited to, by disciplining him, denying him access to the Company's computer system, further denying Conley wages, bonuses and commissions that he was entitled to receive under Company policy and making disparaging comments about him because he complained about the unequal and discriminatory treatment he was experiencing.

**WHEREFORE**, Plaintiff Conley prays for the judgment of this Court against the Davidson Group and Renewal by Andersen as follows:

A. An award of backpay with prejudgment interest for the wages, commissions, bonuses and other employment benefits and opportunities that the Plaintiff has lost as a result of the Defendants' race discrimination and retaliation;

B. Compensatory damages in an amount to be determined by a jury to make Plaintiff whole for the mental anguish, emotional distress and other non-pecuniary damages that Plaintiff has suffered because of Defendants' unlawful conduct;

C. Punitive damages in an amount to be determined by a jury to punish Defendants for their unlawful conduct which was malicious or undertaken with reckless disregard to Plaintiff's rights and to deter others from similar conduct;

D.      An order directing the Defendants to reinstate Plaintiff;

E.     In the event the Court determines that it would be inappropriate to direct the employment of the Plaintiff with Defendants, an award of front pay to compensate Plaintiff for the losses that he reasonably will sustain as the result of being denied continued employment with the Defendants;

E. An award of attorneysø fees and costs; and

F. Such other relief as may be just and proper.

## JURY DEMAND

Now comes the Plaintiff, by counsel, and demands that this cause be tried to a jury on all issues so triable.

 Respectfully submitted,

MACEY SWANSON LLP
/s/ Robert A. Hicks
Robert A. Hicks, Atty. No. 25310-49
Attorney for Plaintiff Conley

MACEY SWANSON LLP
445 North Pennsylvania Street, Suite 401
Indianapolis, IN 46204-1800
Telephone:  (317) 637-2345
Facsimile:  (317) 637-2369
Email: rhicks@maceylaw.com